Good morning. May it please the court and counsel, my name is Sean Chapman. I am here on behalf of defendant appellant Luis Arenas-Lopez in this matter. Could you move that microphone closer to your mouth or project a little bit more because I think we're losing some of you. All right. As the court is aware, this case involves a stop and arrest of the defendant on Interstate 19 on April 20, 2008. The defendant in this case filed a motion to suppress the evidence against him based on lack of probable cause to arrest him. And a magistrate judge heard through an evidentiary hearing evidence on this matter which was quite extensive. He heard from three Border Patrol agents and a DEA agent. And it's clear from the record that he was quite skeptical of a great deal of the testimony presented. A brief synopsis of the facts were that my client, Mr. Lopez, was seen traveling northbound on I-19 in an area called Amado, Arizona. There was another vehicle that later turned out to contain about 900 pounds of marijuana that was traveling in the same direction behind my client. That was the white truck? Yes, sir. It was. The agent in this case, Whitney, concluded or was suspicious that my client might be a scout vehicle for this truck which later turned out to be a load vehicle. When he first saw my client on northbound I-19, my client, according to Whitney, gave a startled look on his face. Whitney was in a marked Border Patrol car? It wasn't really marked. It had lights on it and it had tinted windows but not the traditional marking of a Border Patrol vehicle. And doesn't the record reflect that Whitney indicated that he thought your client could see his shoulder patch? He did, sir. Through his mildly tinted windows? Yes, sir. He did. Whitney then went up ahead and stopped at a rest stop to observe the vehicles as they went by. Again, he noticed my client looked at his vehicle as he drove by. And let me ask you about that because that seemed interesting to me. Whitney's testimony in the record was something like he was very surprised or he found the behavior extremely interesting that your client was then looking back towards him in the rest stop. But if he had just seen him earlier and knew he was a Border Patrol agent from being able to see the patch, what would be surprising about your client looking over to see why he pulled into the rest stop? Absolutely nothing, Your Honor. And that's one of the problems with this case is that many of the factors used to justify a probable cause determination are seemingly innocuous and subject to an innocent explanation. And, Mr. Chapman, as they were proceeding north, it appeared that Agent Whitney was focusing his suspicion on the white truck. And, in fact, as I understand the record, he actually made some calls and he wanted airplane surveillance and he wanted spike strips up ahead. But I didn't see any concern about the purple vehicle your car was driving. Those spike strips, as I read the record, were for the white vehicle that he was in pursuit of on a different road, actually. And the purple vehicle just went ahead. And even when he pulled next to the purple vehicle and then went in front of him, he never even got the license plate number of the purple vehicle. So it doesn't seem like he really had a whole lot of interest in the purple vehicle at that time. At that point, Your Honor, he was disinterested. The load vehicle attempted to escape. That's why the helicopters and spikes were addressed. But it had nothing to do with my client's vehicle. And so he never called ahead to have your client's vehicle even pulled over based on reasonable suspicion to do a stop? No. The record shows that he decided to initiate a stop after the load vehicle had been detained and taken to the I-19 checkpoint. I think you missed a fact. I'm sorry, Your Honor? I think you missed a fact, Mr. Chapman. Yes, sir. After the white vehicle had been detained and 900 pounds of marijuana had been found. That is a very important fact, Your Honor. You're correct. Your Honor, after he passed the I-19 checkpoint, which is a fixed body, it's obvious to anyone that travels southbound on I-19, it's a lot of Border Patrol cars around and canopies and that type of thing for the checkpoint. Border Patrol deemed it unusual that he would look at the checkpoint as he drove by. So I'm sure I'm missing some of the facts here, but that's basically what happened. And Agent Whitney decided to initiate a stop based on the information he had, which was fairly stated reasonable suspicion to initiate a stop. He did do that. The defendant consented to a search of his vehicle. The defendant told him that he'd been to Cerrito, which is about 20 miles north of the stop, and that he was going to a funeral in Nogales. The only thing that was suspicious that Whitney found was a curio blanket in the defendant's car that's typically sold in Nogales, in Sonora, that was similar to a curio blanket that was found in the load vehicle. But, Mr. Chapman, there was something else that he claimed he was shocked by, and actually his testimony is, I was immediately shocked to find nothing, nothing along the lines of what somebody would expect for somebody who's about to attend a funeral, an overnight bag, but it was only a 48-mile trip. Why would somebody take an overnight bag to drive 48 miles to go to a funeral? I agree, Your Honor. And both the magistrate court and the district court found that evidence to be not of any value at all in making a probable cause determination. Well, doesn't it kind of suggest that he was immediately shocked by that, that maybe in terms of credibility determinations he's overstating things here? Yeah. He absolutely is. And the point that strikes home for me is this. Throughout the record, throughout his testimony, he prefaces many of his statements by saying, in my eight-and-a-half years as a border patrol agent, this was suspicious. And then he lets him go. He says, this is your lucky day. I have to let you go, which obviously means he did not believe he had a probable cause to arrest him. Which is confirmed by the only written report that was introduced in the suppression motion. Exactly. And then his credibility is substantially undermined because on cross-examination by the magistrate judge, not even by me, the magistrate judge is incredulous about this. He says, well, my memory was clouded. I wasn't thinking correctly. May I ask you, Mr. Chapman, a fact? Did he let Mr. Arenas Lopez go before the white truck was stopped and the marijuana was found or afterwards? Afterwards, Your Honor. The truck was found before Mr. Arenas was stopped. I'm not so interested in when it was found. This is the question I have for you. When the Dodge truck was stopped and marijuana was found in it, Agent Whitney was there, right? He saw the marijuana. Yes, sir. Yes, sir, he did. He learned of the presence of marijuana in the white truck. Is it your position that following that, he stopped Arenas Lopez and then let him go? Yes, sir. That's exactly what happened. And then he was instructed by Agent Taylor to arrest him. Your Honor, I'm just real quickly, I'm running out of time. I'd like to reserve about a minute and a half for rebuttal if possible. All right. Okay. Thank you. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. In this case, there was sufficient evidence, as the district court found, to arrest the defendant based on the at the second stop of the vehicle he was driving. What happened between the first stop and the second stop to give Agent Whitney a probable cause to arrest Lopez Arena? Factually, nothing happened other than Agent Whitney talked to a DEA agent, and the DEA agent basically made the determination that there was sufficient evidence to go forward, basically. So that's, I mean, factually nothing happened, but the, basically, the agent got advice that he had enough, essentially. And the standard for probable cause is an objective standard. It's not actually what the, whether the agent thinks he has, excuse me, it's not whether the agent thinks he has probable cause. It's whether, in fact, there is probable cause. And you think that the relation by a DEA agent to a Border Patrol agent that there was probable cause was sufficient for the Border Patrol agent to make the arrest? No. What I'm saying is even without that, there was sufficient actual ---- But he hadn't. See, the problem is, I'm having, Mr. Mixell, is that here you have Whitney, who knows there's 900 pounds of marijuana in the load vehicle when he's already suspected the load vehicle is being guided by the scout vehicle, Lopez Arena. And he finds 900 pounds of marijuana, and he remembers the Purple Explorer driven by Lopez Arena. And he stops Lopez Arena, and he says, I don't have enough, and it's a lucky day. And then the only thing that you've told me about, and I'm open to other suggestions, the only thing that happens is a DEA agent who I guess has collective knowledge that Dodge had 900 pounds of marijuana says to Whitney, now you have enough to arrest the man. Why does he say that? What the government's argument is in this case, Your Honor, is the subjective conclusion by the Board of Trial Agents of whether or not he had probable cause is immaterial. What this ---- what the district court needed to decide, and what this Court needs to decide, is whether the objective facts establish probable cause. It's ---- probable cause is an objective determination. The Supreme Court has said that over and over again. It's not the fact that the agent believes he has probable cause doesn't really add to the calculus. What is important are what the facts are that would establish probable cause on an objective level. Well, Mr. Miskol, let me ask you about those facts. The only case you cite for this scout car, load car issue is U.S. versus Vital Pedelia. But those facts are ---- you couldn't find facts more opposite than this case. In those facts, the two cars were on a dirt road, nothing in sight, traveling twice the rate of speed that the Border Patrol thought they should be on this dirt road, after sunset, with no headlights on, and 30 to 40 feet apart. And nothing in sight, no houses, no businesses. It's just a dirt road in the middle of nowhere. That makes sense that that would be a lead car, load car. Here, you have the one car actually entering the interstate and the other back up on the crossroad just beginning its turn. It's a far cry from the case you cite. Okay. What we have in this case, Your Honor, is, first of all, we have them traveling ---- when they're initially seen by the agents, by ---- excuse me, by Agent Whitney, they're traveling about a quarter mile apart, coming onto the highway. They're coming onto the highway at an area that is known to the Border Patrol agents to be an area where smugglers pick up loads that are trying to avoid the checkpoint. It's at a time of morning where they're ---- to the agent, there are unusual traffic. The agent testified that at that time on a Sunday morning, he would expect to see elderly people because that's who lives in the area. These defendants were not elderly. When the agent pulls up beside the Purple Explorer initially, he gets a very startled reaction from the driver of that vehicle, the defendant. Then the agent pulls into the rest area. Again, consistent with being a load car, the agent sees the driver of the Purple Explorer, the defendant, stare at what the agent is doing. Well, with all due respect, if I looked over across the lane and I saw a uniformed officer with a large badge and then that uniformed officer passes me and pulls into a rest stop, I'd be looking, too. I'd be ---- because I'm curious. So ---- Okay. But then you've got other facts, actually. You've got ---- first of all, you've got the testimony of the other agent who had seen that vehicle earlier in the morning at about, I think the testimony was between 5.30 and 6.00, and the agent Whitney saw the vehicle about 7.00. Basically, the evidence indicates that that Purple Explorer was loitering, essentially, in a high area where smuggling activity goes on for about an hour and a half. There's no evidence in the record that that Purple car was loitering. Well, it ---- The officers didn't testify that. The magistrate judge didn't find it, and the district court judge didn't find that they were loitering. And it would ---- it had definitely been seen in the area. It had been seen in the area. That doesn't mean it's loitering. Okay. I accept. I think what you're saying is that a police officer thought that they were loitering. That would be correct, Judge. And I think that would be a fair inference from what they saw. Again, this is an area where the agent did testify. Nothing's open at this time in the morning. It's early on a Sunday morning. Excuse me. That's not what he testified to. Not much. He said there were multiple businesses, because he used the plural, and he said something about not all businesses were open. He didn't say none of the businesses were open. I think he said not much was open. I think you're right. Not much was open. Okay. And he also did testify that he would expect at that time on a Sunday morning to see elderly drivers because that's who lives in the area. Did the magistrate judge or district judge make credibility findings in this case? The district court judge found that the magistrate judge did not make credibility findings, essentially. The district court judge overruled the report and recommendation of the magistrate judge. She stated because he simply omitted facts and there was no explanation why those facts were omitted. So there wasn't really credibility findings made in this case by the magistrate judge, certainly no specific credibility findings. Going back to the totality of the circumstance and all the facts, after the stop of the white vehicle, the agents see the Purple Explorer, again, the defendant's vehicle, coming back southbound on the interstate at this point. Now, the checkpoint doesn't cover the southbound lanes of the interstate. It just covers the northbound lanes. But officers at the checkpoint saw the driver of the vehicle, the defendant, staring at the checkpoint, which, again, they thought was unusual. All of these factors together, combined with the defendant's unlikely story, as the district court found, that he had traveled to Suarita, which, as the agent testified, if he had actually done that, for him to be where he was at the time the agent saw him, he would have had to basically turn around once he got there. That's, I think, an important factor, that all of this can be considered, and it all establishes probable cause, and the district court did not err by making that conclusion. Kennedy. Explain that Suarita conclusion for me, would you please? Okay. What the defendant said when he was stopped by Agent Whitney is that he was coming from Suarita. Where is Suarita? It's north of the area where all this occurs. North of Nogales? Yes. All right. And it's north of the checkpoint. It's, I think, I believe Agent Chapman's correct. It's about 20 miles north. I mean, excuse me, Mr. Chapman's correct. It's about 20 miles north. Well, it can't be 20 miles north, because it's 48 miles north of Nogales, and the checkpoint is that kilometer of 42. So I don't think that's accurate. But anyway, go ahead. So anyway, it's north of where Agent Whitney last saw the explorer. Agent Whitney testified for the vehicle, the Purple Explorer, to be coming from Suarita. When Agent Whitney had seen the vehicle going north at the time he had seen him, he would have had to essentially turn around as soon as he got to Suarita. And that's what the district court also concluded. And that is, that conclusion is supported by the evidence. Because Agent Whitney saw him going northbound. He then saw him going southbound at specific times. Agent Whitney could calculate how much time he had to make that travel that distance. Did he say what he had gone to Suarita for? What? Did he say what he had gone to Suarita for? No, he said he was coming from Suarita, I think was what his testimony was. What Agent Whitney testified the defendant said. Let me clarify that. And there's no testimony in the record that the agent followed up on that? As far as? As far as not being concerned about why he went to Suarita. Maybe he went to pick up a condolence card for the funeral. There was no additional information other than that they didn't see, Agent Whitney didn't see any. Can I ask a question about the standard of review? I think this is very interesting. I think you correctly stated the standard that it's de novo with regard to probable cause. But I'm interested in why it's an abuse of discretion with regard to the factual findings. Now, normally that would be the standard because the district court judge would have heard the evidence, made credibility determinations, and made the findings a fact. But in this case, the district court judge is reviewing the identical record that the three of us are reviewing. In such an unusual case like this, why would there be deference given to the fact finder below? Well, you've got basically in this record, you've got the findings made by the magistrate judge, and then the additional facts that the district court found that the magistrate judge just omitted from his R&R. Those are the only facts in this case, and I think it is a clearer conclusion. What facts did he find that the magistrate judge omitted? The district judge said the magistrate judge omitted the fact about when Agent Whitney first saw the vehicle and pulled into the rest area that the defendant stared or looked carefully at what the Border Patrol agent was doing in the rest area. And then also when the Purple Explorer was heading southbound past the checkpoint, the magistrate omitted the fact that the defendant stared at the checkpoint as he was heading southbound. So what case do you rely upon that the findings of fact by the district court are to be reviewed by us to be clearly erroneous, that they're clearly erroneous? It's basically the case I cited in my brief, Your Honor, which is U.S. v. Smith. And what does that hold? It basically says that for probable cause, the Court reviews de novo the district court's conclusion that there was probable cause, and it reviews for clear error the factual findings made by the Court. That's our usual standard. Right. I think the question was asked by my colleague of, is there a different standard in a situation such as this where there's the factual findings are made based upon a record rather than witnesses? I'm not familiar with any case that holds this a different standard or has even addressed that, Your Honor. Okay. Do you have any notion why it would be? Why would we give discretion to a district court judge who decided something based on a probable cause decided on something based on a cold record? Because ultimately it's the district court that is making the conclusion, not the magistrate. The magistrate doesn't have the legal authority to make the conclusion. It's the district court. And it's the district court's decision that you're reviewing. So I think for that reason would be why. All right. Thank you very much. Do you have some time for rebuttal? All right. First of all, the district court judge did recognize that the magistrate court made a credibility finding. She specifically stated at a hearing, My order does not dispute any of the credibility findings of Judge Velasco that are relevant to the issue relating to the motion to suppress. My order basically says based on my independent review of the facts that led up to the arrest by the agent that there was probable cause. The analysis that she used is the exact analysis that's rejected in Ridgway. In Ridgway, the government argued, well, we don't need to get to the credibility issue there because the court is just looking at the bare facts and drawing a different conclusion. That's what the district court judge did in this case, and that's completely in opposite to what's stated in Ridgway. I don't get what you mean. The district court said that I'm not changing the credibility findings of the court, so I don't need to have the witnesses in front of me. That's right. Is there anything wrong with that? That's what was rejected in Ridgway. You mean a district court can't accept the findings, the credibility findings? That's what magistrate and judge at work is for. They can, but if they're rejecting the credibility findings, they have to have a de novo evidentiary hearing. Well, yes, of course. That's the rule. But the district judge said I'm not rejecting the credibility findings. But she did by rejecting his recommendation. No. She took the facts and determined whether or not there was probable cause. But at no time did she ever reject the findings of the magistrate judge on credibility or facts. In my position, you can't do that because the facts and credibility of the agents are inextricably intertwined. We have facts, and then we apply the law to determine probable cause. That's why we review probable cause for de novo, but we review the facts for clearly erroneous. That's Hornbook law here. Well, respectfully, I don't think Ridgway is consistent with that position, Your Honor. What I also wanted to add is that, again, D.Agent Taylor's 26-page report, there's no mention of probable cause, only reasonable suspicion. Whitney says this is his lucky day, lets him go. And in U.S. v. Buckner, the Ninth Circuit said that in drug cases, courts may consider the expertise of officers involved regarding probable cause. This experience may lead a trained officer to perceive meaning from otherwise innocent conduct. The opposite is true here. Let's not pretend that this fiction that was created when they released him and then determined that they had probable cause is real. If you judge them by their conduct and what they wrote in their reports, they clearly believed, based on their expertise, that they didn't have probable cause. They only had reasonable suspicion. And it was only until a motion to suppress was filed that, as Magistrate Velasco eloquently stated, they attempted to re-spin the facts from reasonable suspicion to probable cause, and that should not be allowed. Thank you very much, counsel. We thank both counsel for their presentations. And the case of U.S. v. Arenas-Lopez 11-10141 is submitted for decision.
judges: Bennett, Wallace, Bea